**Jerome SEATON and Gladys Seaton, his wife, Plaintiffs-Appellees,**

v.

**SKY REALTY COMPANY, INC., et al., Defendants-Appellants.**

**No. 72-1230.**

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1973.

Decided Feb. 20, 1974.

Harold A. Liebenson, Dom J. Rizzi, Chicago, Ill., for defendants-appellants.

Robert G. Schwemm, Ronald S. Samuels, Chicago, Ill., for plaintiffs-appellees; F. Willis Caruso, Chicago, Ill. of counsel.

Before CLARK, Associate Justice,* and FAIRCHILD and STEVENS, Circuit Judges.

FAIRCHILD, Circuit Judge.

Mr. and Mrs. Seaton, who are black, were awarded compensatory and punitive damages against defendants Sky Realty Company, a real estate broker, Jerry Carr, its manager, and Art Potocki, one of its salesmen, for racially motivated refusal to negotiate for the sale of a dwelling in a predominantly white area of Chicago. They and the owner, Mrs. Schmidt, were found, after a bench trial, to have violated 42 U.S.C. §§ 1982[1] and 3604.[2] Mrs. Schmidt did

---

* Associate Justice Tom C. Clark of the Supreme Court of the United States (Retired) is sitting by designation.

1. "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to . . . purchase, . . . real . . . property." See Jones v. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

2. ". . . ., it shall be unlawful—
 "(a) To refuse to sell . . . after the making of a bona fide offer, or to refuse to negotiate for the sale . . . or otherwise make unavailable or deny, a dwelling to any person because of race, . . .

 "(d) To represent to any person because of race, . . . that any dwelling is not available for . . ., sale, . . . when such dwelling is in fact so available."

not appeal. The other defendants challenge the sufficiency of the evidence. We affirm.

After a summary of the facts, the district court found as follows:

"Taken in its entirety, the plaintiffs have amply demonstrated through the evidence and the circumstances involved that Sky Realty Company, Inc., the defendant Jerry Carr, the defendant Art Potocki are systematically engaged in violation of both Sections 1982 and 3604, particularly as they relate to these plaintiffs."

There was evidence, some undisputed and some showing, when credibility was resolved as the district judge did, that when Mrs. Seaton telephoned to inquire about the Schmidt home which had been advertised, Potocki assured her it was for sale, and made an appointment, but when she and her husband appeared, he told them it had been sold; that later, when investigators inquired, Carr and Potocki produced a written offer; that the purported offer had not been and never was accepted; that the usual course of business had not been followed in the receipt of the purported offer; that when Potocki was ultimately induced to show the Schmidt property to the Seatons, he did so in a grudging, uncooperative, and deliberately discouraging manner; that the house was eventually sold for substantially less than the figure quoted to the Seatons or specified in the purported offer; that it is a practice at Sky Realty for prospect sheets to contain notations of race or national origin where the prospect is of a minority race or ethnic group; and that the prospect sheet for the Seatons contained the notation "Col" as an abbreviation for colored.

■ There are other details, but we find ample evidence to support the finding made by the judge, and it approaches the frivolous to contend, as defendants do, that his finding was clearly erroneous.

With respect to compensatory damages, defendants assert that "there is no evidence that the plaintiffs suffered any loss or damages."

The finding of the district court was as follows:

"Although the record is sparse as to the actual damages suffered, testimony was introduced that the plaintiff Jerome Seaton suffered great embarrassment because of the action of the defendants during his attempt with his wife to visit the property . . . and further, the plaintiffs were forced, by virtue of the wrongful actions of the various defendants, to make several trips to and from the home site and the offices of the defendant Sky Realty Co. The Court therefore concludes that actual damages have been adequately shown and they are therefore assessed in the amount of $500."

■■ Mr. Seaton testified, apparently with reference to the visit to the Schmidt home with Mr. Potocki, when the Seaton children were present: "I was humiliated. I was intimidated, not only as a person but as a man. He stripped me of my right as a father to my kids." It appears to be defendants' position that unless there is evidence of economic or financial loss, or medical evidence of mental or emotional impairment, there can be no award of compensatory damages.

We conclude, to the contrary, that an award of compensatory damages under § 1982 or "actual damages" under § 3612 is appropriate for humiliation caused by the type of violations of rights established here. Humiliation can be inferred from the circumstances as well as established by the testimony. Mr. Seaton was subjected to a racial indignity which is one of the relics of slavery which 42 U.S.C. § 1982 was enacted to eradicate. Jones v. Mayer Co., 392 U.S. 409, 441–443, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

Compensatory damages are an appropriate remedy for deprivation of a federal right, are governed by federal standards, and "both federal and state rules on damages may be utilized, which-

ever better serves the policies expressed in the federal statutes. . . . The rule of damages, whether drawn from federal or state sources, is a federal rule responsive to the need whenever a federal right is impaired." Sullivan v. Little Hunting Park, 396 U.S. 229, 239–240, 90 S.Ct. 400, 406, 24 L.Ed.2d 386 (1969).

In 1919 where a voter was wrongfully deprived of his right to vote for a member of Congress, the Circuit Court of Appeals for the Eighth Circuit said:

"In the eyes of the law this right is so valuable that damages are presumed from the wrongful deprivation of it without evidence of actual loss of money, property, or any other valuable thing, and the amount of the damages is a question peculiarly appropriate for the determination of the jury, because each member of the jury has personal knowledge of the value of the right." Wayne v. Venable, 260 F. 64, 66 (8th Cir., 1919), quoted and held applicable in a § 1983 action where a claim of unreasonable and illegal arrest was before the court. Basista v. Weir, 340 F.2d 74, 88 (3d Cir., 1965).

In a § 1983 action for an illegal arrest, although the amount of compensatory damages found by the jury was held to be excessive, an award of $5,000 was approved and the court said: "Apart from special monetary damages it is open to the jury in a case such as this to make a determination as to the amount that plaintiff is entitled to be awarded for the deprivation. This, of course, would include his subjective pain and suffering and humiliation." Rhoads v. Horvat, 270 F.Supp. 307, 310 (D. Colo.1967).

In a § 1983 action for unlawful arrest and unreasonable search, the district court noted the absence of "proof of actual damages of any specific amount." The court said in awarding $500 against one defendant and $250 against another,

"However, there is no doubt that Plaintiff suffered humiliation, embarrassment and discomfort in addition to being deprived of his federally protected rights as set forth above." Sexton v. Gibbs, 327 F.Supp. 134, 143 (N.D.Texas, 1970), aff'd 446 F.2d 904 (5th Cir., 1971).

In an action under 42 U.S.C. §§ 1982 and 3604, involved here, for racially motivated refusal to rent, this court reversed a judgment of dismissal and directed the district court to award plaintiff "such sum, not to exceed $1000, as the district court in its discretion may determine will fairly and properly compensate such plaintiff for the loss of her civil rights and any mental anguish suffered by her." Smith v. Sol D. Adler Realty Company, 436 F.2d 344, 351 (7th Cir., 1970). See Steele v. Title Realty Company, 478 F.2d 380, 384 (10th Cir., 1973); Gonzales v. Fairfax-Brewster School, Inc., 363 F.Supp. 1200 (E.D.Va., 1973); Allen v. Gifford, D.C., 368 F. Supp. 317 (E.D.Va., 1973).

In a § 1983 action for causing plaintiff's loss of public employment in retaliation for exercise of first amendment rights, the Ninth Circuit said: "Compensatory damages awardable in a Civil Rights Act case are not limited to the out-of-pocket pecuniary loss the complainant suffered. Damages can also be awarded for emotional and mental distress caused by the intentional tort." (citing cases). Donovan v. Reinbold, 433 F.2d 738, 743 (9th Cir., 1970).

In a somewhat comparable situation, an action against a union for intentional discrimination, violating a federal right, the Eighth Circuit said, "The damage arising from invidious discrimination against an employee by reason of his nonunion membership may often times be measured only in terms of the mental distress, anguish and humiliation caused him." Richardson v. Communications Workers of America, 443 F.2d 974, 983 (8th Cir., 1971).

We are satisfied that under decided federal cases among the circuits, compensatory damages may be awarded for the humiliation suffered by plaintiffs, whether inferred from the circum-

stances or established by testimony, and that $500 is well within the range of reasonable amounts.

Defendants also challenge the basis for any award of punitive damages.

The district court found that defendants were "systematically engaged" in the unlawful discrimination. The court also stated that "ample cause exists for the granting of punitive damages against them" and went on to make it clear that a $1,000 punitive damage award was made against each of the three defendants who are here on appeal, "not joint and several liabilities but individual liabilities and individual judgments."

 Thus the district court must have been satisfied that there was the degree of wilful and wanton disregard of plaintiffs' right not to suffer this sort of discrimination to warrant punitive damages. The evidence supports the finding and it is not clearly erroneous. The degree of deliberateness, stubbornness, or recklessness in doing injury to others which is a prerequisite for punitive damages has been variously expressed: *e. g.*, "intentionally fraudulent, malicious, wilful or wanton", Aladdin Mfg. Co. v. Mantle Lamp Co. of America, 116 F.2d 708, 716 (7th Cir., 1941), in an action for trade-mark infringement and unfair competition; "wantonness, malice, oppression or circumstances of aggravation", Hannigan v. Sears, Roebuck and Co., 410 F.2d 285, 293 (7th Cir., 1969), applying Illinois law; "wilfully and wantonly", Wright v. Kaine Realty, 352 F.Supp. 222, 223 (N. D.Ill., 1972), applying the federal statutes involved here. See Rogers v. Loether, 467 F.2d 1110, 1112 (7th Cir., 1972) aff'd sub nom. Curtis v. Loether, —— U.S. ——, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). A universally appropriate phrasing of the standard is not readily achieved, and we doubt that there is any measurable difference between the federal standard and that of Illinois. In

any event we conclude that the standard was fulfilled in this case.

The judgment appealed from is affirmed.