Gussie DAVIS, et al.,
Plaintiffs-Appellees,

v.

MANSFIELD METROPOLITAN
HOUSING AUTHORITY, et al.,
Defendants-Appellants.

No. 83–3473.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 28, 1984.

Decided Dec. 28, 1984.

William M. Connelly, Kevin E. Joyce (argued), Connelly, Soutar & Jackson, Toledo, Ohio, for defendants-appellants.

Peter Iskin (argued), Robert H. Bonthius, Jr., Cleveland, Ohio, for plaintiffs-appellees.

Before ENGEL and MERRITT, Circuit Judges, and GIBBONS, District Judge.*

GIBBONS, District Judge.

This case arises out of defendant Mansfield Metropolitan Housing Authority's administration of the Section Eight[1] existing housing program. The district court found that defendants had violated plaintiffs' Fourteenth Amendment procedural due process rights by denying eligibility to certain applicants and terminating certain participants in the program without a hearing. It awarded injunctive relief and damages. On appeal, defendants challenge both the correctness of the court's factual findings and the relief awarded. We believe that the court's factual findings were not clearly erroneous, but disagree in part with its decisions about the appropriate relief. Defendants also contend that the district court incorrectly denied the motion to dismiss of William Gandert, Executive Director of the Authority, and entered judgment against him. We agree with the district court's ruling as to defendant Gandert.

Plaintiff Gussie Davis initiated this action in April, 1978, on behalf of herself and similarly situated individuals who were being denied initial and continued participation in the Section Eight existing housing program.[2] Beverly M. Day and Deborah J. Simmering were later allowed to intervene as plaintiffs. All three named plaintiffs asserted individual damage claims as well as the class claims. Defendants in the case were Mansfield Metropolitan Housing Authority (MMHA) and William Gandert, Executive Director of MMHA.

Proceeding under 42 U.S.C. Section 1983, plaintiffs alleged that defendants had deprived them of rights secured by federal statutes and the United States Constitution. They asserted several theories of recovery, but the only allegation upon which they prevailed was the claim that defendants had deprived them of due process by denying eligibility to certain applicants and terminating certain participants from the Section Eight existing housing program without a hearing. The persons who were being terminated from the program or denied initial eligibility were those who allegedly owed past rent or were responsible for damage to apartments that they had previously occupied.

The trial court issued an opinion on June 6, 1983, holding for plaintiffs on the due process issue. Defendants were enjoined from denying or terminating participation in the Section Eight existing housing program because of overdue rent or outstanding damage claims without providing for notice and hearing. The trial court delineated the requirements of the hearing. In addition, two of the plaintiffs were awarded damages.

The facts underlying plaintiffs' suit were disputed at trial and apparently are still disputed by defendants. The trial court, however, resolved any conflicts in the evidence and, in its order of June 6, 1983, described the facts as it found them. Findings of fact by a trial court can be set aside by a reviewing court only if they are clear-

---

* The Honorable Julia Gibbons, Judge, United States District Court for the Western District of Tennessee, sitting by designation.

1. 42 U.S.C. § 1437f (1976 & Supp. VI 1982).

2. The classes certified for each of two class counts of the complaint were as follows:

COUNT I—All present and future participants in the Section 8 Existing Housing program whose benefits under said Program are, or will be, discontinued, terminated, or suspended or reduced, or threatened with same, by MMHA without the opportunity to attend a prior hearing which comports with the elements of due process.

COUNT II—All past, present, and future applicants for the Section 8 Existing Housing Program who were, are, or will be, determined by MMHA to have incurred debts with MMHA as a result of participation in MMHA housing programs other than Section 8 without the opportunity to attend a prior hearing which comports with the elements of due process; and whose admissions into the MMHA Section 8 Existing Housing Program were denied on the basis of said alleged debts or were, are, or will be, made contingent upon their agreement to pay or make arrangements to pay said alleged debts.

ly erroneous. *Sawyer v. Arum,* 690 F.2d 590, 591 (6th Cir.1982). After a scrutiny of the trial record, it appears that the trial court's findings were not clearly erroneous. Therefore, the facts will be described as found by the trial court.

The Section Eight existing housing program is a means by which lower income families receive rent subsidies. The program is administered by local housing authorities such as MMHA that enter the program by executing a written agreement with the United States Department of Housing and Urban Development (HUD). *See* 24 C.F.R. § 882.102 (1983). Persons seeking participation in the program must apply to the local housing authority for a certificate of participation. *Id.* When an eligible party secures a certificate, he is then responsible for finding suitable housing within the housing authority's jurisdiction. 24 C.F.R. § 882.103 (1983).

After the eligible individual finds an available apartment and an owner who is willing to participate in the program, the owner of the rental unit and the eligible party submit a lease to the housing authority for its approval. 24 C.F.R. §§ 882.-116(j), 882.210 (1983). The housing authority calculates the percentage of the rent payable by the Section Eight participant based upon his family's income. 24 C.F.R. § 882.116 (1983). The housing authority pays the remainder. 24 C.F.R. § 882.105 (1983).

Defendants had a policy of refusing to grant certificates of eligibility to participate in the Section Eight existing housing program to persons against whom there was an outstanding claim for damages to rental property or for unpaid rent either to MMHA or previous landlords. The claims usually arose from the individual's participation in other MMHA-administered programs. Defendants followed this policy even when a potential participant disputed the claim. They simply refused to certify the individual for participation until the claim was paid or the individual agreed to pay the claim.

After the trial court ordered defendants to stop this practice in a preliminary injunction issued in this case, they developed a strategy to continue the discrimination. When an application by one with an outstanding claim became first on the priority list for housing, defendants would transfer the application to an inactive file, thereby effectively eliminating the opportunity to participate.

■ Defendants also refused to recertify individuals who were present participants in the Section Eight existing housing program if there was an outstanding claim against them. These persons usually sought recertification in order to renew their lease or to transfer to a more suitable apartment. Defendants refused to grant recertification, thereby effectively terminating their participation in the Section Eight program. Recertification was denied without a hearing. In addition, some present participants were threatened with termination if they refused to pay outstanding claims against them. The trial court concluded that the tenants had no opportunity to dispute the rent and damage claims.[3]

**3.** With regard to the court's factual findings, defendants contend that the evidence requires a finding that, with respect to both Section Eight participants and applicants, MMHA had a policy of investigating claims for damage and past rent and holding informal hearings to determine the validity of the claims. They argue that when an owner made a claim for money due from a tenant either for damage to a unit or for past rent, the tenant was notified of the claim and was informed that an informal hearing would be held to determine the validity of the claim. Defendants point out that MMHA sent inspectors to the apartment of a tenant against whom claims were made to ascertain whether the tenant had caused the damage. In addition, defendants assert that in some instances MMHA would have the tenant and landlord come to the MMHA office and attempt to settle the damage claim.

There is ample evidence to support the trial court's finding that defendants paid no attention to tenants' or applicants' protests and made no arrangements to hear the disputes, particularly the testimony of Constance Underwood. The evidence indicates that the visits by inspectors and the occasions when the tenants discussed claims with MMHA and landlords occurred in the course of MMHA's efforts to settle disputes

In addition to the issue of correctness of the district court's factual findings, defendants raise several other issues on appeal. First, they contend that the hearing ordered by the district court was too extensive.

Defendants here concede that sufficient governmental action exists to invoke the constitutional protection of due process and that participation in a public housing program is a property interest protected by due process. The district court's ruling in this regard is consistent with the rulings of other courts that have considered the issue. *See Holbrook v. Pitt*, 643 F.2d 1261, 1278 (7th Cir.1981); *Caulder v. Durham Housing Authority*, 433 F.2d 998 (4th Cir.1970), *cert. denied*, 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d 539 (1971); *Escalera v. New York City Housing Authority*, 425 F.2d 853 (2d Cir.1970), *cert denied*, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); *Baker v. Cincinnati Metropolitan Housing Authority*, 490 F.Supp. 520, 532 (S.D.Ohio 1980), *aff'd*, 675 F.2d 836 (6th Cir.1982); *Ferguson v. Metropolitan Development and Housing Agency*, 485 F.Supp. 517, 521 (M.D.Tenn.1980); *Owens v. Housing Authority of the City of Stamford*, 394 F.Supp. 1267 (D.Conn.1975). *See also Vandermark v. Housing Authority of the City of New York*, 663 F.2d 436 (3d Cir.1981); *Ressler v. Landrieu*, 502 F.Supp. 324 (D.Alas.1980); *Brezina v. Dowdall*, 472 F.Supp. 82 (N.D.Ill.1979). Thus, the only issue before us is whether the hearing ordered by the district court is more extensive than required in this situation.

■ When it is determined that one is entitled to procedural due process, the next step is to ascertain exactly what process is due. Procedural due process is a flexible concept; its requirements are tailored to meet the needs of each specific situation. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Cafeteria & Restaurant Workers Union,*

*Local 473, AFL–CIO v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961); *Fleming v. United States Department of Agriculture*, 713 F.2d 179, 183 (6th Cir.1983).

■ Although the parties disagree as to the type of hearing required here, they agree on the proper test to be used to make that determination. The test is basically one of balancing the government's interest against the private interest involved. Three factors are considered:

(1) the private interest that will be affected by the official action;

(2) the risk of erroneous deprivation through current procedures and the appropriateness of additional procedural safeguards; and

(3) the government's interest, including the governmental function involved and the administrative burdens imposed by additional safeguards.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). *See also Goldberg v. Kelly*, 397 U.S. 254, 263–71, 90 S.Ct. 1011, 1018–22, 25 L.Ed.2d 287 (1970). Applying the proper factors to the instant case, we conclude that the trial court was incorrect in requiring such an extensive predetermination hearing for persons who were denied original eligibility and for present participants in the program.

In considering the first factor of the private interest affected by the official action, potential and current participants have different private interests. Participants who are terminated or denied recertification are deprived of their present shelter. Their loss is greater than that of persons from whom a benefit it withheld through denial of initial eligibility. The difference in interests is particularly apparent since a determination of eligibility does not guarantee a place to live. An individual who receives a certificate of eligibility still must find an

---

between it and the landlords. Tenant participation in resolving the claims was an occasional chance occurrence, not a part of regular procedures allowing for an applicant or participant to

contest his denial of eligibility or termination. The trial court was not clearly erroneous in finding that no such procedures existed.

appropriate unit and a willing landlord. 24 C.F.R. § 882.103 (1983).

The second factor to consider is the risk of erroneous deprivation through current procedures and the appropriateness of additional safeguards. In this case the risk of erroneous deprivation is great. The trial court essentially found that no protection was provided to applicants or current participants, either before or after eligibility and termination decisions were made. Contrary to defendants' argument, the occasional fortuitous inclusion of a tenant in the resolution of a claim between the housing authority and the landlord affords no protection to a tenant. Additional safeguards are clearly required.

The government interest is the third factor for consideration. The housing authority's duty is to operate the public housing program and provide low income housing to those who qualify. Its interest in this case must ultimately be described as insuring payment of meritorious damage and rent claims. It also has an interest in being free from unduly burdensome and expensive administrative requirements in carrying out its obligations.

After considering and balancing the three factors, we are convinced that the safeguards required for persons denied eligibility and those terminated from the program are somewhat different. For both groups, however, the safeguards are less extensive and less burdensome than those required by the district court.

■ Due process requires that an applicant for the Section Eight existing housing program be able to request an informal hearing if he has been denied eligibility based on an outstanding claim for alleged past rent or damages. Written notice to the applicant must set forth the allegations on which the denial was based and the method for requesting a hearing. At the hearing the applicant or his attorney, if he chooses to have one, must have an opportunity to make an oral presentation. A decision must be made within a reasonable time after hearing and the applicant must be advised of the reasons for the decision. *See Ressler v. Landrieu*, 502 F.Supp. 324 (D.Alas.1980); *Neddo v. Housing Authority of the City of Milwaukee*, 335 F.Supp. 1397 (E.D.Wisc.1971); *Davis v. Toledo Metropolitan Housing Authority*, 311 F.Supp. 795 (N.D.Ohio 1970).

This informal hearing will impose no burden on defendants. HUD already requires local housing authorities to inform an applicant denied eligibility that he is entitled to an informal hearing upon request. 24 C.F.R. § 882.209(f) (1983).

■ For present participants in the program, we conclude that due process requires a hearing prior to termination or denial of recertification. In addition, the nature of the interest of the present participants necessitates somewhat more extensive procedures than those required for applicants. Existing regulations set forth hearing procedures[4] for participants in public housing programs who lease directly from public housing authorities. We conclude that those procedures afford due process to an individual for whom termination from the existing housing program is proposed because of outstanding rent or damage claims and should be applied in this situation. Although the procedures we require are not identical to those required by the district court, they contain no major differences and adequately protect participants in the program. At the same time, because the procedures are already required by regulation in a context similar to this one, our decision does not impose significant administrative burdens on the Authority.

Defendants next argue that the trial court's award of damages to two of the plaintiffs was improper. The trial court

---

**4.** Those procedures are set out at 24 C.F.R. § 866.4(1) and §§ 866.53–57. They include adequate notice of the grounds for termination, a right to examine relevant documents of the public housing authority prior to hearing, the right to counsel, and the right to cross-examine witnesses. In addition, the tenant has a right to a written decision by an impartial hearing panel based solely on evidence presented at the hearing.

awarded plaintiff Simmering nine hundred dollars ($900.00) in compensatory damages for loss of Section Eight benefits for twelve months. In addition, plaintiffs Simmering and Davis were each awarded two thousand five hundred dollars ($2500.00) to compensate for the frustration and mental suffering inflicted upon them because of the deprivation of their constitutional right to procedural due process.

 The court finds no error in the award of nine hundred dollars ($900.00) to Simmering for loss of Section Eight benefits and affirms that part of the award. The court cannot, however, affirm the award for mental suffering and frustration. Damage for mental and emotional distress caused by deprivation of procedural due process is not compensable under 42 U.S.C. Section 1983 unless the plaintiffs have actually proven that such injury occurred. *Carey v. Piphus*, 435 U.S. 247, 264, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978). The record in this case contains insufficient evidence that these plaintiffs suffered frustration or mental suffering.

The trial court followed *Seaton v. Sky Realty Co.*, 491 F.2d 634 (7th Cir.1974) in awarding damages for mental suffering to plaintiffs. *Seaton* involved a black plaintiff who was seeking damages under 42 U.S.C. Section 1982 for a racially-motivated refusal to negotiate with him concerning a purchase of a home in a white neighborhood. *Id.* at 635. The *Seaton* court did state that in Section 1982 actions, humiliation and mental suffering could be inferred from the circumstances of the deprivation and damages awarded without proof of mental suffering and humiliation in the record. *Id.* at 636. Despite this comment, in *Seaton* there was proof in the record of actual mental suffering and humiliation. *Id.*

The present case is governed by *Carey*. The only evidence in the entire record that could possibly be construed as actual evidence of emotional distress is testimony by Simmering that she was "kind of angry" when her application for Section Eight housing was denied. This fleeting testimony cannot support an award for humiliation and mental suffering. Therefore, the court finds no testimony in the record upon which the trial court could have properly based its award of $2,500 to each of these plaintiffs.

Defendants finally argue that the trial court erred in denying defendant Gandert's motion to dismiss and in entering judgment against him. They contend that Gandert as MMHA Executive Director is not liable under 42 U.S.C. Section 1983 for the improper conduct of MMHA and its employees. Further, they assert that he is entitled to qualified immunity.

 Appellants' argument on this issue is essentially that the trial court's findings about Gandert's involvement are clearly erroneous. The trial court found that Gandert, who had been MMHA Executive Director for eleven years prior to trial, approved and authorized the wrongful conduct of MMHA employees. He actively participated in the wrongful conduct. These findings are not clearly erroneous. Thus, Gandert's involvement obviously meets the standard for liability of supervisory officials set forth in *Brandon v. Allen*, 719 F.2d 151 (6th Cir.1983), *cert. granted*, — U.S. —, 104 S.Ct. 2384, 81 L.Ed.2d 342 (1984).

Nor is a qualified immunity defense available to Gandert. Under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 2738. *See also Davis v. Scherer*, — U.S. —, —, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984); *Alexander v. Alexander*, 706 F.2d 751, 754 (6th Cir.1983).

In this case defendants have conceded on appeal that plaintiffs were entitled to procedural due process. Thus, their position implicitly admits that they violated plaintiffs' procedural due process rights if the trial court's factual findings are accepted.

This position was not prompted by changes in the law while the case was pending; there have been no significant changes in the law since the challenged conduct occurred.

At the time of the acts on which liability is based, it was established beyond question that at least some type of hearing was necessary before one could be deprived of public assistance that had been awarded because of need. *Goldberg v. Kelly*, 397 U.S. 254, 261–64, 90 S.Ct. 1011, 1016–19, 25 L.Ed.2d 287 (1970). Several federal cases had applied the due process right to deprivations of public housing assistance. *See, e.g. Caulder v. Durham Housing Authority*, 433 F.2d 998 (4th Cir.1970), *cert. denied*, 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d 539 (1971); *Escalera v. New York City Housing Authority*, 425 F.2d 853 (2d Cir.1970), *cert. denied*, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); *Brown v. Housing Authority of the City of Milwaukee*, 340 F.Supp. 114 (E.D.Wis.1972). Some cases had also held that potential participants in public housing programs were entitled to an informal hearing if their application was rejected. *Neddo v. Housing Authority of the City of Milwaukee*, 335 F.Supp. 1397 (E.D.Wis.1971); *Davis v. Toledo Metropolitan Housing Authority*, 311 F.Supp. 795 (N.D.Ohio 1970).

The law was clear at the time of Gandert's conduct that some type of hearing was due before a person could be eliminated from a government benefit such as the Section Eight housing program. The trial court found that no hearing of any type was afforded. Gandert's argument is not that no hearing was required, but that the trial court incorrectly determined that hearings were not held. As we have previously noted, the trial court's finding was not clearly erroneous.

It is also evident that Gandert should have known of those clearly established constitutional rights. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v.*

*Fitzgerald,* 102 S.Ct. at 2739. Thus, Gandert is not entitled to qualified immunity.

We affirm the judgment against Gandert in the amount of $900.00.

Several other issues have been raised on appeal. We find defendants' arguments on these issues without merit.

The judgment of the trial court is reversed in part and affirmed in part and is remanded for further proceedings in accord with this opinion.