693 F.Supp. 785 (1988)
Thomas M. and Mary C. TALLARICO, and Mary Park Tallarico, By and Through her duly appointed next friend Thomas Tallarico, Plaintiffs,
v.
TRANS WORLD AIRLINES, INC., Defendant.
TRANS WORLD AIRLINES, INC., Third-Party Plaintiff,
v.
M.V. CORPORATION, an Arkansas corporation, d/b/a Dillard's Travel Agency, Third-Party Defendant.
No. 87-776C(1).
United States District Court, E.D. Missouri, E.D.
August 18, 1988.
*786 *787 Valerie Richardson, St. Louis, Mo., for plaintiffs.
Wm. Davis, Ralph Soebbing, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, Chief Judge.

A. Introduction

Plaintiff Thomas M. Tallarico, through the offices of third-party defendant M.V. Corporation d/b/a Dillard's Travel, made a reservation for his minor daughter Mary Park (Polly) Tallarico to fly home to St. Louis from her school in Texas for the Thanksgiving Holiday aboard defendant Trans World Airlines' afternoon flight from Houston to St. Louis on Tuesday, November 25, 1986 (TWA Flight No. 550). Polly, age 13 in November 1986, has Cerebral Palsy. Polly cannot walk and Polly cannot talk. However, by way of sign language, sounds, and communications boards, Polly can communicate with persons who have the training to understand her signs, her sounds, and her communication boards. Polly can crawl slowly on the ground. Polly possesses normal intelligence.
Polly's reservation with TWA for Flight No. 550 contained the designation "WCHC," indicating that Polly would need (or would be in) a wheelchair and would need assistance getting on and off the plane. Polly's reservation did not indicate: that she was age 13 and would be traveling alone, that she has Cerebral Palsy, that she cannot walk, and that she cannot talk.
On Tuesday afternoon, November 25, 1986, Polly arrived at Houston Hobby Airport in a wheelchair accompanied by the hired limousine driver who had driven her from her school to the airport. No personnel from Polly's school, or other person who was familiar with Polly's condition and abilities, accompanied Polly to the airport. According to plaintiffs' evidence, about one hour before the scheduled departure of TWA Flight No. 550, the limousine driver presented Polly at the TWA ticket counter to arrange for Polly's boarding onto Flight No. 550. The limousine driver informed the TWA ticket agent that Polly would be flying alone. The TWA ticket agent determined: that Polly was an unaccompanied minor, that Polly was in a wheelchair, that Polly has Cerebral Palsy, that Polly cannot walk, and that Polly cannot talk. Thereafter, the TWA personnel at Houston Hobby Airport, in consultation with other TWA personnel, decided that Polly would not be permitted to fly aboard Flight No. 550 unaccompanied. The TWA personnel in Houston refused to permit Polly to board, and to fly to St. Louis on, Flight No. 550.
Later that afternoon, Polly's father flew from St. Louis to Houston. On the following morning, Polly and Mr. Tallarico flew back to St. Louis. At the end of the Thanksgiving Holiday weekend, Mr. Tallarico flew to Houston with Polly and then flew back to St. Louis. Mr. Tallarico expended $1350 in out-of-pocket expenses for: the cost of his two roundtrip flights from St. Louis to Houston plus his incidental costs.
Plaintiffs, Mr. and Mrs. Tallarico and Polly Tallarico, brought the instant action against TWA. Plaintiffs alleged that, by refusing to permit Polly to board and to fly to St. Louis on Flight No. 550, TWA violated the Air Carrier Access Act of 1986, 49 U.S.C.App. § 1374(c). Plaintiffs also brought six state law claims against TWA within the diversity and pendent jurisdiction of the Court. TWA impleaded M.V. Corp. d/b/a etc. on a third-party claim for indemnity. On September 30, 1987, the Court granted TWA's motion to strike Mr. and Mrs. Tallarico's claim pursuant to the Air Carrier Access Act, concluding that they did not have an implied private cause of action under the statute. The Court also *788 granted TWA's motion to strike plaintiffs' demand for attorney's fees.
On February 1, 1988, the case proceeded to a jury trial. Plaintiffs submitted three of their seven claims against TWA to the jury: (1) Polly Tallarico's claim for violation of the Air Carrier Access Act (Count I); (2) all three plaintiffs' claim for breach of contract (Count II); and (3) all three plaintiffs' claim for negligent infliction of emotional distress (Count VII). TWA submitted its third-party claim against M.V. Corp. d/b/a etc. to the jury. The Court refused to submit plaintiffs' claim for punitive damages against TWA to the jury. On February 11, 1988, the jury returned verdicts in plaintiffs' favor on all three of their claims against TWA, assessing plaintiffs' damages as follows: $80,000 on Count I, $2000 on Count II, and $10,000 on Count VII. The jury returned a verdict in M.V. Corp. d/b/a etc.'s favor on TWA's third-party claim.
The matter is now before the Court on the following post-trial matters: (1) TWA's motion for JNOV or new trial; (2) plaintiffs' motion for partial new trial on issue of punitive damages only; (3) plaintiffs' bill of costs and TWA's motion to dismiss plaintiffs' bill of costs; (4) M.V. Corp. d/b/a etc.'s bill of costs; and (5) M.V. Corp. d/b/a etc.'s motion for sanctions.

B. TWA's Motion for JNOV or New Trial

1. Count I: Violation of the Air Carrier Access Act.
The Air Carrier Access Act of 1986, 49 U.S.C.App. § 1374(c), provides:
(c) Discrimination against qualified handicapped individuals prohibited
(1) No air carrier may discriminate against any otherwise qualified handicapped individual, by reason of such handicap, in the provision of air transportation.
(2) For the purpose of paragraph (1) of this subsection the term "handicapped individual" means any individual who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment.
49 U.S.C.App. § 1374(c). On its face, the Act does not expressly grant private citizens a cause of action to remedy perceived violations of the Act by air carriers. Thus, as TWA argues, Polly fails to state a claim under the Act unless the Act created an implied private cause of action in her favor. Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), provides the analytical framework for determining whether Polly does in fact have such an implied private cause of action, and provides four factors relevant to discerning Congressional intent regarding private remedies:
First, is the plaintiff "one of the class for whose especial benefit the statute was enacted," ...? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?
Cort v. Ash, 422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted) (emphasis in original).
As to the first of the Cort v. Ash factors, Polly, as a handicapped individual, is a member of the class of persons for whose especial benefit the Air Carrier Access Act was enacted. As to the second of the factors, there is no explicit indication in the legislative history of the Act that Congress intended either to create or to deny implied private rights to enforce the Act. Yet, the Court believe that the circumstances surrounding the enactment of the Act provide an implicit indication that Congress did intend to create a private cause of action for handicapped individuals who are injured when they are discriminated against by air carriers. The Act was enacted because, in United States Dept. of Transp. v. Paralyzed Veterans of America, 477 U.S. 597, 106 S.Ct. 2705, 91 L.Ed.2d 494 (1986), the Supreme Court held *789 that Section 504 of the Rehabilitation Act applies only to those commercial airlines receiving direct federal subsidies. See 1986 U.S.Code Cong. & Admin.News 2328-2330; Anderson v. USAir, Inc., 818 F.2d 49 (D.C.Cir.1987). Further, the Air Carrier Access Act was patterned after the Rehabilitation Act. The Rehabilitation Act does create an implied private cause of action for handicapped persons who are injured when they are discriminated against in violation of that Act. See Miener v. Missouri, 673 F.2d 969 (8th Cir.), cert. denied, 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982). On this basis, the Court concludes that Congress implicitly intended that handicapped persons would have an implied private cause of action to remedy perceived violations of the Air Carrier Access Act.
As to the third of the factors, the Court does not perceive any inconsistency with the underlying purposes of the legislative scheme, namely to prevent discrimination against handicapped persons by air carriers, to imply a remedy to handicapped persons for perceived violations of the Act. Finally, as to the fourth of the factors, discrimination against handicapped persons by air carriers is not an area of law basically the concern of the states.
For the foregoing reasons, applying the four-factor Cort v. Ash analysis, the Court concludes that Polly stated a claim under the Air Carrier Access Act because she had an implied private cause of action under the Act. Further, the Court finds no basis for, and rejects, TWA's primary jurisdiction and exhaustion of administrative remedies arguments.
By its terms, the Air Carrier Access Act prohibits air carriers from discriminating against "otherwise qualified handicapped individuals." TWA contends that Polly is, as a matter of law, not an "otherwise qualified handicapped individual," and thus that TWA must, as a matter of law, prevail on Polly's claim of discrimination in violation of the Act.
The Act does not contain a definition for the term "otherwise qualified handicapped individual." The Act did require that the Secretary of Transportation, within 120 days of October 2, 1986 (the date of enactment of the statute), "promulgate regulations to ensure non-discriminatory treatment of qualified handicapped individuals consistent with safe carriage of all passengers on air carriers." P.L. 99-435, § 3; 100 Stat. 1080. As of November 25, 1986 (the date TWA refused to permit Polly to board and to fly to St. Louis on Flight No. 550, and less than two months after the Act was enacted), the Secretary of Transportation had not yet enacted those regulations. Thus, when TWA refused to permit Polly to board, and to fly to St. Louis on, Flight No. 550, TWA had little official guidance as to whether particular handicaps did or did not prevent a person from being an "otherwise qualified handicapped individual." Likewise, as of the date of the trial herein, the Secretary of Transportation had not yet enacted those regulations. Thus, at the trial herein, the Court had little official guidance as to whether Polly's handicaps did or did not prevent her from being an "otherwise qualified handicapped individual." The legislative history to the Act does provide an "intended" definition for the phrase, 1986 U.S.Code Cong. & Admin.News at 2332, and it is this definition which the Court used in instructing the jury. See Instruction No. 23.
By way of an instruction patterned after the familiar Title VII burden shifting procedure, see Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and patterned after Rehabilitation Act discrimination instructions, see Norcross v. Sneed, 755 F.2d 113, 116 (8th Cir.1985), Doe v. New York University, 666 F.2d 761, 776-777 (2nd Cir.1981), the Court submitted Polly's claim of discrimination in violation of the Air Carrier Access Act to the jury. See Instruction No. 21. This instruction required the jury to find that Polly was an "otherwise qualified handicapped individual" as that term was defined in Instruction No. 23.
On the basis of the following evidence: (1) Polly was an unaccompanied 13 year old child, (2) Polly has Cerebral Palsy, (3) Polly was wheelchair bound and cannot walk, (4) *790 Polly cannot talk and cannot communicate with persons not trained to understand her methods of communication, (5) if, during flight, Polly had to go to the bathroom, Polly would not have been able to get herself to the airplane lavatory unaccompanied,[*] and Polly was not wearing a diaper or a catheter device, (6) during an in-flight emergency, Polly would not have been able to deplane unaccompanied,[*] would not have been able to communicate acknowledgment and understanding of reasonable safety-related requests of airline personnel, and would not have been able to comply with many reasonable safety-related requests of airline personnel, and (7) Polly's reservation with TWA (which was made on September 29, 1986, prior to the enactment of the Air Carrier Access Act) only indicated "WCHC" and did not indicate that Polly was an unaccompanied minor child with severe Cerebral Palsy; if this Court had been the trier of fact, this Court would have concluded that, as a factual matter, Polly was not an "otherwise qualified handicapped individual," or, alternatively, that, as a factual matter, TWA reasonably believed that, and had a reasonable safety-related basis for believing that, Polly's handicap made her not an "otherwise qualified handicapped individual." Thus, if this Court had been the trier of fact, this Court would have found that TWA did not discriminate against Polly in violation of the Air Carrier Access Act.
However, the jury found otherwise. The jury found that Polly was an "otherwise qualified handicapped individual" and found that TWA had discriminated against her in violation of the Act. This Court may upset that jury verdict and enter a judgment n.o.v. in TWA's favor "only if all the evidence points one way and is susceptible of no reasonable inferences sustaining" Polly's position. Stafford v. Neurological Medicine, Inc., 811 F.2d 470, 473 (8th Cir. 1987). In applying this standard, this Court must "consider all evidence in the light most favorable to [Polly], assume that the jury resolved all evidentiary conflicts in [her] favor, assume as true all facts the evidence tended to prove, and give [Polly] the benefit of all reasonable inferences that could be drawn from the facts proved." Id. So construing the evidence, and particularly considering that, unbeknownst to TWA, Polly had taken lessons at her school as to how to fly on airplanes and previously had flown on a commuter airline unaccompanied, this Court cannot conclude that, as a matter of law, Polly was not an "otherwise qualified handicapped individual" and cannot conclude that TWA is entitled to judgment n.o.v. on Polly's claim that TWA discriminated against her in violation of the Air Carrier Access Act. The Court's conclusion in this regard is reinforced by the utter failure on the part of TWA's attorneys and TWA to present any safety or other expert witness testimony on the question whether Polly was an "otherwise qualified handicapped individual."
As to TWA's motion for new trial, the Court cannot conclude, upon considering all the circumstances of this case, that a miscarriage of justice occurred in the jury finding that TWA discriminated against Polly in violation of the Air Carrier Access Act. Therefore, TWA is not entitled to a new trial on Polly's claim pursuant to the Act.
Apart from the question whether Polly established that TWA discriminated against her in violation of the Air Carrier Access Act is the question whether the jury's $80,000 damages award to Polly on that claim is sustainable. The Court concludes that no evidence whatsoever supports this damages award and that, as a matter of law, this damages award is not sustainable. Through the expenditures of her agent (her father), Polly sustained $1350 in out-of-pocket damages as a result of TWA's refusal to permit her to board, and to fly to St. Louis on, Flight No. 550. The remainder of the $80,000 damages award ($78,650) has no evidentiary basis whatsoever or constitutes an award for emotional distress damages. The Court concludes that, because the Air Carrier Access Act is an anti-discrimination statute, as a matter of law, emotional distress damages *791 are not recoverable for violations of the Act. See Muldrew v. Anheuser-Busch, Inc., 728 F.2d 989, 992 n. 2 (8th Cir.1984) (no emotional distress damages in Title VII actions); Fiedler v. Indianhead Truck Lines, Inc., 670 F.2d 806, 810 n. 3 (8th Cir.1982) (no emotional distress in ADEA actions); Bradford v. Iron County C-4 School District, 36 F.E.P. cases 1296 (E.D.Mo.1984) (no emotional distress damages in Rehabilitation Act actions); Martin v. Cardinal Glennon Memorial Hospital, 599 F.Supp. 284 (E.D.Mo.1984) (same). Therefore, judgment n.o.v. is entered in TWA's favor on $78,650 of Polly's $80,000 damages award on her Count I claim for violation of the Air Carrier Access Act, and Polly's damages judgment on that claim is reduced to $1350.

2. Count II: Breach of Contract.

An implied term of the air carriage contract between TWA and plaintiffs was that Polly was an "otherwise qualified handicapped individual." Having concluded above that the jury's finding that Polly was an "otherwise qualified handicapped individual" cannot be upset, and as TWA refused to permit Polly to fly in accordance with that air carriage contract, TWA breached the contract. However, plaintiffs' damages for that breach of contract were, at most, limited to $1350. Therefore, judgment n.o.v. is entered in TWA's favor on $650 of plaintiffs' $2000 damages award on their Count II breach of contract claim, and plaintiffs' damages judgment on that claim is reduced to $1350. Further, Count II compensates plaintiffs for the same damages for which Count I compensates Polly. Therefore, judgment n.o.v. in TWA's favor is entered making Polly's judgment on Count I and plaintiffs' judgment on Count II judgments in the alternative to each other, and plaintiffs and Polly can recover only on the Count I judgment or the Count II judgment, but not both.

3. Count VII: Negligent Infliction of Emotional Distress.
The evidence fully supports that TWA was negligent with respect to how it dealt with Polly at the Houston Hobby Airport. However, to recover for negligent infliction of emotional distress, Polly had to prove that she sustained "emotional distress or mental injury [which was] medically diagnosable and [] of sufficient severity so as to be medically significant." Bass v. Nooney, 646 S.W.2d 765, 772-73 (Mo. banc 1983). Further, "[i]n order to recover for emotional distress where no physical injury is involved, plaintiff must prove by expert medical testimony that the emotional distress or mental injury was medically diagnosed and of sufficient severity as to be medically significant." State ex rel. Benz v. Blackwell, 716 S.W.2d 270 (Mo.App. 1986) (emphasis added).
In the instant case, Polly did not sustain any physical injury as a result of TWA's negligence, and plaintiffs did not introduce any expert medical testimony regarding Polly's purported emotional distress, did not introduce any evidence that Polly sustained emotional distress which had been medically diagnosed, and did not introduce any evidence that any emotional distress which Polly sustained was of sufficient severity so as to be medically significant.[**] Therefore, plaintiffs failed to meet their evidentiary burden to sustain a recovery against TWA for negligent infliction of emotional distress. Accordingly, judgment n.o.v. is entered in TWA's favor on plaintiffs' Count VII claim for negligent infliction of emotional distress. For the same reasons that plaintiffs' failed to meet their evidentiary burden to sustain a recovery against TWA for negligent infliction of emotional distress, Polly failed to sustain her evidentiary burden to support emotional distress damages recovery on her claim pursuant to the Air Carrier Access Act (to the extent that emotional distress damages are recoverable for violations of the Act).
*792 For all the foregoing reasons, TWA's motion for JNOV is granted as follows: on Polly's Count I, Polly's damages judgment is reduced to $1350; on plaintiffs' Count II, plaintiffs' damages judgment is reduced to $1350; Polly's damages judgment on Count I is in the alternative to plaintiffs' damages judgment on Count II, recovery being permitted on one or the other, but not both; and on plaintiffs' Count VII, judgment n.o. v. is entered in TWA's favor. In all other respects, TWA's motion for JNOV or for new trial is denied.

C. Plaintiffs' Motion for Partial New Trial on Issue of Punitive Damages Only.

The evidence adduced, and proposed to be adduced, at trial was insufficient to submit the issue of punitive damages to the jury. The evidence was insufficient to establish the recklessness, willfulness, maliciousness, wantonness, or intentional indifference necessary to support an award of punitive damages. Therefore, plaintiffs' motion is denied.

D. Plaintiffs' Bill of Costs and TWA's Motion to Dismiss Plaintiffs' Bill of Costs.

Plaintiffs' Bill of Costs seeks $13,277.41, mostly for the costs incurred with respect to the 25 depositions taken in this case. At those 25 depositions, plaintiffs deposed a total of 14 witnesses and TWA deposed of a total of five witnesses. First, TWA's Motion to Dismiss Plaintiffs' Bill of Costs or in the Alternative Motion for More Definite Statement is denied as moot because plaintiffs supplemented their Bill of Costs by the attachments to their Memorandum in Opposition to TWA's Motion. Second, although the Court finds it hard to believe that it was necessary for plaintiffs to depose 14 persons and does believe that some of the depositions may have been unduly prolonged, defendant has failed to convince the Court that any particular deposition was taken for investigative purposes, was not reasonably necessary for the development of the case, or was unduly prolonged or excessive. Therefore, TWA's objection on those bases is overruled.
Third, with respect to the $11,594.74[***] in costs for depositions: (A) With respect to the depositions taken by TWA of Linda Villaire, Susan Hensley, Mary Tallarico, Mary Fischer, and Theodore Sherwood, plaintiffs seek a total of $506.46 for the cost of one copy of each of the depositions. These costs are approved in full except for the $13.50 UPS charge for Theodore Sherwood's deposition. (B) With respect to the depositions taken by plaintiffs of George Kreith, Lorean Malone, John Lamb, Linda Prothero (first deposition expense receipt for her), Marline Johannson, Brian Hermansader, Linda Gravani, JoAnn Duffy, and "Lynn" Prothero (third deposition expense receipt for her), plaintiffs' expense receipts for these depositions indicate that they obtained an original and a copy of each of these depositions. The Court deems the copies to have been obtained for the convenience of counsel, and the costs thereof are disapproved. The expense receipts for these depositions bill the original and the copy together as one item. The Court therefore approves one-half of that charge and disapproves one-half thereof. (C) With respect to the depositions taken by plaintiffs of Barry Carlbloom, Jack DeCourcey, Richard Wattleton, Allan Haag, and Kerry Kenning, plaintiffs' expense receipts for these depositions do not contain any breakdown of the charges. The Court therefore presumes that plaintiffs obtained an original and a copy of each of these depositions and that the copy accounts for one-third of the total charge for each deposition. The Court deems the copies to have been obtained for the convenience of counsel, and the costs thereof are disapproved. The Court therefore approves two-thirds of the cost of each of these depositions and disapproves one-third thereof. (D) With respect to the depositions taken by plaintiffs of "Lynn" Prothero (second deposition expense receipt for her) and Alan Campbell (billed together), the expense receipt bills *793 the copy separately from the original and the Court disapproves the cost of the copy. The Court also disapproves the Federal Express charge. (E) With respect to the depositions taken by plaintiffs of Marline Johannson, Brian Hermansader, Linda Gravani, JoAnn Duffy, and "Lynn" Prothero (third deposition expense receipt for her), each deposition expense receipt bills for a $40.00 messenger charge, which costs are disapproved. (F) With respect to the $63.18 charge for the non-appearance of Vernice Jones at her deposition, and the $156.00 charge for the special process server upon Vernice Jones and her witness fee, these costs are approved. (G) Amounts claimed, disapproved, and approved: (i) Linda Villaire, Susan Hensley, Mary Tallarico, Mary Fischer, and Theodore Sherwood: claimed $506.46, disapproved $13.50, approved $492.96, (ii) George Kreith and Lorean Malone (billed together): claimed $247.60, disapproved $107.80 (one-half of $215.60), approved $139.80, (iii) John Lamb: claimed $125.20, disapproved $54.60 (one-half of $109.20), approved $70.60, (iv) Linda Prothero (first deposition expense receipt for her): claimed $860.40, disapproved $347.20 (one-half of $694.40), approved $513.20, (v) Allan Haag: claimed $858.57, disapproved $286.19 (one-third of claimed), approved $572.38, (vi) Barry Carlbloom: claimed $1346.67, disapproved $448.89 (one-third of claimed), approved $897.78, (vii) Jack DeCourcey: claimed $1390.19, disapproved $463.39 (one-third of claimed), approved $926.80, (vii) Richard Wattleton: claimed $1603.28, disapproved $534.42 (one-third of claimed), approved $1068.86, (ix) Kerry Kenning: claimed $429.09, disapproved $143.03 (one-third of claimed), approved $286.06, (x) Vernice Jones: claimed and approved $219.18, (xi) "Lynn" Prothero (second deposition expense receipt for her) and Alan Campbell (billed together): claimed $540.60, disapproved $143.10 (cost of copy plus cost of Federal Express), approved $397.50, (xii) Marline Johannson: claimed $949.50, disapproved $460.75 (one-half of $841.50 plus $40.00), approved $488.75, (xiii) Brian Hermansader: claimed $404.50, disapproved $213.25 (one-half of $346.50 plus $40.00), approved $191.25, (xiv) Linda Gravani: claimed $526.00, disapproved $274.00 (one-half of $468.00 plus $40.00), approved $252.00, (xv) JoAnn Duffy: claimed $508.00, disapproved $265.00 (one-half of $450.00 plus $40.00), approved $243.00, and (xvi) "Lynn" Prothero (third deposition expense receipt for her): claimed $1079.50, disapproved $550.75 (one-half of $1021.50 plus $40.00), approved $528.75. Accordingly, of the $11,594.74 claimed by plaintiffs as costs for depositions, $4,305.87 is disapproved and $7,288.87 is approved.
Fourth, plaintiffs' copy costs in the amount of $742.38 are approved. Fifth, plaintiffs' other costs in the amount of $940.29, to which TWA has not objected, are approved.
For the foregoing reasons, plaintiffs' Bill of Costs in the amount of $13,277.41 is approved in part and disapproved in part, and TWA's objections to plaintiffs' Bill of Costs are sustained in part and overruled in part. The Court approves $8,971.54 of plaintiffs' costs and disapproves $4,305.87 of plaintiffs' costs.

E. M.V. Corp. d/b/a etc.'s Bill of Costs.

M.V. Corp. d/b/a etc. seeks $3,605.29 in costs from TWA. TWA objects that M.V. Corp. d/b/a etc.'s Bill of Costs was filed more than 40 days after the entry of judgment on February 19, 1988, in contravention of Local Rule 24. However, the Court, upon good cause shown, granted M.V. Corp. d/b/a etc. leave to file its Bill of Costs out of time. See Local Rule 24(C)(1). TWA's other objection to M.V. Corp. d/b/a etc.'s Bill of Costs is without merit because M.V. Corp. d/b/a etc. reasonably needed to obtain copies of 18 of the 25 depositions taken by plaintiffs and TWA. Therefore, TWA's objections to M.V. Corp. d/b/a etc.'s Bill of Costs are overruled, and M.V. Corp. d/b/a etc.'s Bill of Costs in the amount of $3,605.29 is approved and taxed against TWA.

F. M.V. Corp. d/b/a etc.'s Motion for Sanctions.

M.V. Corp. d/b/a etc. contends that TWA's third-party complaint was not *794 objectively reasonable under the circumstances. M.V. Corp. d/b/a etc. therefore seeks to recover its attorney's fees and travel expenses incurred in defending itself in this action, and, particularly, incurred in attending the 25 depositions taken by plaintiffs and TWA all over the country. However, the Court is unable to conclude that TWA's decision to implead M.V. Corp. d/b/a etc. by way of the third-party complaint is sanctionable. With respect to passenger reservations, TWA relies upon the information which the travel agents booking reservations provide. The evidence at trial was disputed whether M.V. Corp. d/b/a etc., despite knowing that Polly was a 13 year-old minor with Cerebral Palsy who would be traveling unaccompanied over the busy Thanksgiving Holiday, advised or failed to advise TWA of those facts. Had TWA known this information in advance (assuming that M.V. Corp. d/b/a etc. did fail to advise TWA of this information), the unfortunate occurrence at the Houston Hobby Airport might not have occurred. TWA's position, as put forth by its third-party complaint, that M.V. Corp. d/b/a etc.'s alleged negligence in failing to advise TWA of this information caused the unfortunate occurrence at the Houston Hobby Airport is not unreasonable and is not sanctionable. Therefore, M.V. Corp. d/b/a etc.'s motion for sanctions is denied.

ORDER
Pursuant to the memorandum filed herein this day,
IT IS HEREBY ORDERED that defendant Trans World Airlines' Motion for JNOV or in the Alternative for New Trial be and is granted in part and denied in part.
IT IS FURTHER ORDERED that defendant TWA's Motion for JNOV be and is granted as follows:
(1) Judgment n.o.v. be and is entered in defendant TWA's favor on $78,650 of plaintiff Mary Park (Polly) Tallarico's $80,000 damages judgment on her Count I claim for violation of the Air Carrier Access Act, thereby reducing plaintiff Mary Park (Polly) Tallarico's damages judgment on Count I to $1350.
(2) Judgment n.o.v. be and is entered in defendant TWA's favor on $650 of plaintiffs' $2000 damages judgment on their Count II claim for breach of contract, thereby reducing plaintiffs' damages judgment on Count II to $1350.
(3) Judgment n.o.v. be and is entered in defendant TWA's favor making plaintiff Mary Park (Polly) Tallarico's $1350 damages judgment on Count I a judgment in the alternative to plaintiffs' $1350 damages judgment on Count II such that plaintiff Mary Park (Polly) Tallarico and plaintiffs can recover only on the Count I judgment or the Count II judgment, but not on both.
(4) Judgment n.o.v. be and is entered in defendant TWA's favor on plaintiffs' Count VII claim for negligent infliction of emotional distress.
IT IS FURTHER ORDERED that, in all other respects, defendant TWA's Motion for JNOV be and is denied, and that defendant TWA's Alternative Motion for New Trial be and is denied.
IT IS FURTHER ORDERED that plaintiffs' Motion for Partial New Trial on Issue of Punitive Damages Only be and is denied.
IT IS FURTHER ORDERED that plaintiffs' $13,277.41 Bill of Costs be and is approved in part and disapproved in part, that defendant TWA's objections to plaintiffs' Bill of Costs be and are sustained in part and overruled in part, that defendant TWA's Motion to Dismiss Plaintiffs' Bill of Costs or in the Alternative Motion for More Definite Statement be and is denied as moot, that $8,971.54 of plaintiffs' costs be and are approved, that $4,305.87 of plaintiffs' costs be and are disapproved, and that defendant TWA be and is taxed with plaintiffs' costs in the amount of $8,971.54.
IT IS FURTHER ORDERED that third-party defendant M.V. Corporation d/b/a Dillard's $3,605.29 Bill of Costs be and is approved, that defendant TWA's objections to third-party defendant's Bill of Costs be and are overruled, and that defendant TWA be and is taxed with third-party defendant's costs in the amount of $3,605.29.
*795 IT IS FURTHER ORDERED that third-party defendant's Motion for Sanctions be and is denied.
NOTES
[*] Polly could have crawled slowly down the aisle of the plane.
[**] The Court did refuse to permit plaintiffs to call a certain psychologist as a witness because plaintiffs did not include the psychologist in their pre-trial witness list and because permitting plaintiffs to call the psychologist as a witness would have prejudiced TWA. The Court's ruling in this regard is more fully explained in the record made at the time.
[***] This amount (taken from plaintiffs' supplementation of their Bill of Costs) is $.29 less than the $11,595.03 claimed in the original Bill of Costs. The Court uses the lower amount here and adds $.29 to the costs to which TWA has not objected.