Thomas M. and Mary C. TALLARICO, and Mary Park Tallarico, by and through her duly appointed next friend Thomas Tallarico, Appellants/Cross–Appellees,

v.

TRANS WORLD AIRLINES, INC., Appellee/Cross–Appellant,

v.

M.V. CORPORATION, an Arkansas corporation, d/b/a Dillard's Travel Agency.

Nos. 88–2429, 88–2486.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1989.

Decided Aug. 8, 1989.

David B.B. Helfrey, St. Louis, Mo., for appellants/cross-appellees.

Philip L. Willman, St. Louis, Mo., for appellee/cross-appellant.

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSON,* Senior District Judge.

BEAM, Circuit Judge.

The Tallaricos appeal several decisions which the district court made regarding their discrimination action against Trans World Airlines, Inc. (TWA) under the Air Carriers Access Act (ACAA or Act), 49 U.S.C.App. § 1374(c) (Supp. IV 1986).

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern District of Iowa, sitting by designation.

TWA cross-appeals claiming that there is no private cause of action under the ACAA. We affirm in part and reverse in part.

## I. Background

Polly Tallarico, who is fourteen years old, has cerebral palsy which impedes her ability to walk and talk. She generally uses a wheelchair, but is able to move about on her own by crawling. Although Polly is able to speak only short words, she is able to hear and understand the spoken word. She communicates by use of a variety of communication devices such as a communication board, a memo writer and a "Minispeak."

On November 25, 1986, the day before the Thanksgiving holiday, Polly arrived at Houston's Hobby Airport intending to fly to St. Louis, Missouri, unaccompanied. When the TWA ticket agent, Richard Wattleton, learned that Polly intended to fly alone he contacted Lynn Prothero, acting TWA station manager, and asked for directions as to how he should handle the situation. Wattleton had learned from the limousine driver assisting Polly that she could not speak or walk. Wattleton relayed this information to Prothero and also informed her that Polly could communicate by use of a communication board. From this information, Prothero determined that Polly would not be allowed to fly unaccompanied and informed Wattleton of her decision. This decision was apparently made on the basis of Prothero's conclusion that Polly could not take care of herself in an emergency and could not exit the plane expeditiously. As a result of this decision, Polly's father had to fly to Houston to accompany Polly to St. Louis.

The Tallaricos brought suit alleging that TWA violated the ACAA by denying Polly the right to board the plane because of her physical handicaps. The jury found for the Tallaricos awarding damages in the amount of $80,000. The district court entered judgment notwithstanding the verdict on the issue of damages reducing the award to $1,350 which is equivalent to the Tallaricos' actual out-of-pocket expenses.

## II. Discussion

### A. Private cause of action

Logic dictates that we begin with TWA's cross-appeal in which TWA contends that the ACAA does not provide for a private cause of action. The Act states that "[n]o air carrier may discriminate against any otherwise qualified handicapped individual, by reason of such handicap, in the provision of air transportation." 49 U.S.C.App. § 1374(c)(1) (Supp. IV 1986). The ACAA does not expressly provide for a cause of action to enable private citizens to seek a remedy for a violation of the Act. Consequently, we must determine if a private cause of action is implied under the ACAA. *Cort v. Ash*, 422 U.S. 66 (1975), states that four factors are relevant in making such a determination.

> First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78 (citations omitted) (emphasis in original).

The district court concluded, using the analysis of *Cort v. Ash*, that the ACAA does imply a private cause of action. The court determined, first, that "Polly, as a handicapped individual, is a member of the class of persons for whose especial benefit the Air Carrier Access Act was enacted." *Tallarico v. Trans World Airlines, Inc.*, 693 F.Supp. 785, 788 (E.D.Mo.1988). Although the court found "no explicit indication in the legislative history of the Act that Congress intended either to create or to deny implied private rights to enforce the Act," the court stated that it believed "that the circumstances surrounding the

enactment of the Act provide[d] an implicit indication that Congress did intend to create a private cause of action for handicapped individuals who are injured when they are discriminated against by air carriers." *Id.* The court found no "inconsistency with the underlying purposes of the legislative scheme, namely to prevent discrimination against handicapped persons by air carriers, to imply a remedy to handicapped persons for perceived violations of the Act." *Id.* at 789. And finally the court determined that "discrimination against handicapped persons by air carriers is not an area of law basically the concern of the states." *Id.*

TWA claims that Polly is not an intended beneficiary of the ACAA because the Act is intended to benefit only "otherwise qualified handicapped individuals." Because we find that Polly is an otherwise qualified handicapped individual, we do not need to decide whether the ACAA was intended to benefit handicapped persons who are not otherwise qualified.

No definition of otherwise qualified handicapped individual is given in the Act. Although the ACAA requires the Secretary of Transportation "to promulgate regulations to ensure nondiscriminatory treatment of qualified handicapped individuals," no regulations were in effect at the time of the incident. S.Rep. No. 99–400, 99th Cong., 2d Sess. 4, *reprinted in* 1986 U.S. Code Cong. & Admin.News 2328, 2332. However, the legislative history of the Act states that the definition of otherwise qualified handicapped individual is intended to be consistent with the Department of Transportation's definition in 14 C.F.R. § 382.3(c) (1988). *Id.* at 4, *reprinted in* 1986 U.S.Code Cong. & Admin.News at 2332. Section 382.3(c) defines a "qualified handicapped person" as a handicapped individual (1) who tenders payment for air transportation, (2) whose carriage will not violate Federal Aviation Administration (FAA) regulations, and (3) who is willing and able to comply with reasonable safety requests of the airline personnel or, if unable to comply, who is accompanied by a responsible adult passenger who can ensure compliance with such a request. 14

C.F.R. § 382.3(c) (1988). An instruction based upon section 382.3(c) was given to the jury which instruction required the jury to find that Polly was an otherwise qualified handicapped individual before it could allow her to recover. Although the jury obviously determined that Polly was an otherwise qualified handicapped individual, the district court stated in its memorandum that had it been the trier of fact, it would have concluded differently.

We agree with the jury's conclusion and hold that Polly is an otherwise qualified handicapped individual within the meaning of the ACAA. The evidence at trial showed that Polly had tendered payment for air transportation, that her carriage would not violate any FAA regulations (in fact she had flown alone before), and that she was capable of complying with the reasonable safety requests of airline personnel. The evidence demonstrated that Polly is able to crawl on her knees or her hands and knees, that she has normal intelligence, and that she is capable of communicating her needs. Polly has a variety of ways of communicating including the use of communication boards which contain the letters of the alphabet and some short phrases; a memo writer, an electronic typewriter-like device; and a "Minispeak," a portable computer with an electronic voice attached. Polly is able to fasten her own seatbelt as well as put on an oxygen mask. In addition, Polly's mother testified that she was confident that Polly could crawl to the bathroom (and, presumably, an exit) on the plane if necessary. From this evidence we conclude, as did the jury, that Polly is an otherwise qualified handicapped individual and, consequently, one of the class for whose especial benefit the ACAA was enacted.

■ The second factor under *Cort v. Ash,* is whether there is any indication of legislative intent to create such a remedy or to deny one. As the district court noted, the ACAA was enacted in response to the Supreme Court ruling in *United States Dep't of Transp. v. Paralyzed Veterans of America,* 477 U.S. 597, 106 S.Ct. 2705, 91 L.Ed.2d 494 (1986) (*PVA*), which case held

that section 504 of the Rehabilitation Act of 1973 applies only to those commercial airlines receiving direct federal subsidies. S.Rep. No. 99–400 at 1–2, *reprinted in* 1986 U.S.Code Cong. & Admin.News at 2329. Congress felt that "the practical effect of [PVA was] to leave handicapped air travelers subject to the possibility of discriminatory, inconsistent and unpredictable treatment on the part of air carriers." *Id.* Consequently, Congress amended the Federal Aviation Act of 1958 to specifically prohibit discrimination against otherwise qualified handicapped individuals. Relying on this portion of the legislative history and the fact that the ACAA is patterned after the Rehabilitation Act of 1973, which Act has been held to imply a private cause of action, the district court concluded that "Congress implicitly intended that handicapped persons would have an implied private cause of action to remedy perceived violations of the [ACAA]." *Tallarico*, 693 F.Supp. at 789. We agree.

■ We also agree with the district court's conclusions concerning the third and fourth factors of *Cort v. Ash*. We believe that to allow a private cause of action is consistent with the underlying purposes of the ACAA. In addition, we conclude that the area of discrimination against handicapped persons by air carriers is not an area which is basically the concern of the states. Accordingly, we affirm the district court's decision that the ACAA impliedly provides a private cause of action.

### B. Damages for emotional injuries

■ The jury awarded the Tallaricos $80,000. The district court then granted judgment n.o.v. in favor of TWA as to $78,650 of the damages award. The court concluded that there was insufficient evidence to support the total award and that as a matter of law, the award was not sustainable. The court determined that $1,350 of the award was compensation for out-of-pocket damages as a result of TWA's refusal to allow Polly to board and the remainder was damages for emotional distress. The court held that because the ACAA is an anti-discrimination statute, "as

a matter of law, emotional distress damages are not recoverable for violations of the Act." *Tallarico*, 693 F.Supp. at 790–91 (citations omitted). In reaching this conclusion, the court relied upon cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 706 *et seq.* which did not allow emotional distress damages for violations of the acts. *Muldrew v. Anheuser-Busch, Inc.*, 728 F.2d 989, 992 n. 2 (8th Cir.1984) (Title VII); *Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 810 n. 3 (8th Cir.1982) (ADEA); *Bradford v. Iron County C–4 School District*, 37 Empl. Prac. Dec. (CCH) ¶ 35,404 (E.D.Mo. June 13, 1984) (Rehabilitation Act).

The Tallaricos argue that these cases should not have been relied upon by the court in making its determination as to whether emotional distress damages are allowable under the ACAA because each of the acts, Title VII, the ADEA, and the Rehabilitation Act, specifically provide a complete remedial scheme for violations. As the Tallaricos note, where a statute provides a specific remedial scheme, it is evidence that any other remedies are excluded. *See Bailey v. Federal Intermediate Credit Bank*, 788 F.2d 498, 500 (8th Cir.), *cert. denied*, 479 U.S. 915, 107 S.Ct. 317, 93 L.Ed.2d 290 (1986). Because the ACAA does not provide a remedial scheme, evidence of a Congressional intent to exclude emotional distress damages does not exist.

Further, the district court's conclusion that all antidiscrimination statutes disallow emotional distress damages is incorrect. The Supreme Court has held that damages for mental and emotional distress are compensable under 42 U.S.C. § 1983 (1982). *Carey v. Piphus*, 435 U.S. 247, 263–64, 98 S.Ct. 1042, 1052–53, 55 L.Ed.2d 252 (1978). In addition, damages for mental distress are allowed under 42 U.S.C. § 1982 (1982) and the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (1982). *See Seaton v. Sky Realty Co.*, 491 F.2d 634 (7th Cir.1974); *Stewart v. Furton*, 774 F.2d 706 (6th Cir.1985); *Phillips v. Hunter Trails Community Ass'n,*

685 F.2d 184 (7th Cir.1982). We believe that the purpose and operation of the ACAA are more closely analogous to section 1983 than to Title VII, the ADEA and the Rehabilitation Act. Consequently, we conclude that emotional distress damages are allowable under the ACAA.

■ The district court also held that there was no evidentiary basis for that portion of the award which exceeded the Tallaricos' out-of-pocket expenses. We disagree. "Because of the difficulty of evaluating * * * emotional injuries * * *, courts do not demand precise proof to support a reasonable award of damages for such injuries." *Block v. R.H. Macy & Co.*, 712 F.2d 1241, 1245 (8th Cir.1983) (citations omitted). The Supreme Court in *Carey* stated that although the award "must be supported by competent evidence," injury in the form of mental suffering or emotional anguish "may be evidenced by one's conduct and observed by others." *Carey*, 435 U.S. at 264 n. 20, 98 S.Ct. at 1052 n. 20. In addition, the Seventh Circuit held in *Seaton*, 491 F.2d at 636, that "[h]umiliation can be inferred from the circumstances as well as established by the testimony."

In this case the proof of the emotional distress which Polly suffered after TWA denied her boarding came from the testimony of her mother, her father, the assistant director for Polly's school and the driver who was with Polly when the incident occurred. Theodore Sherwood, the driver who took Polly to the airport, testified that Polly was with him when he was told she would not be allowed to board the aircraft. Transcript, vol. 1 at 167. He stated he noticed that Polly was getting disturbed as she listened to his conversations with TWA employees. *Id.* Sherwood also testified that he felt it necessary to call Polly's school to see if someone there could talk to Polly and calm her down because after the incident she was crying and upset about what had happened. *Id.* at 170. Polly's father testified that Polly was very angry and upset about the incident. Transcript, vol. 2 at 111. In addition, he stated that since the incident Polly has seemed more

withdrawn, quiet and reserved. *Id.* at 112. Polly's mother also testified that Polly was upset about what happened and that Polly was anxious about the situation and concerned about having to fly back to Houston after the Thanksgiving holiday. Transcript, vol. 1 at 29. Susan Oldham, the assistant director of Polly's school, testified that prior to the incident Polly was very outgoing and socialized well with the other students. Transcript, vol. 2 at 150. After the incident, Ms. Oldham testified, Polly seemed more withdrawn and would spend large amounts of time by herself in her room after school was over. *Id.* at 156. Ms. Oldham stated that when she asked Polly if something about her trip home had upset her, Polly replied that what had happened had made her feel badly and had hurt her feelings. *Id.* at 157.

We find that sufficient evidence was presented to support the jury's award of $80,000. Consequently, we reverse the district court's judgment n.o.v.

C. Punitive damages

■ At the close of the Tallaricos' evidence, the district court granted TWA's motion for a directed verdict on the issue of punitive damages. The Tallaricos assert that the court erred in granting TWA's motion because the evidence adduced by the Tallaricos was sufficient to make a *prima facie* case that TWA acted in such a manner as to warrant granting punitive damages. Punitive damages are awarded where the "defendant exhibits oppression, malice, gross negligence, willful or wanton misconduct, or reckless disregard" for the rights of the plaintiff. *Garza v. City of Omaha*, 814 F.2d 553, 556 (8th Cir.1987). A trial court should grant a motion for a directed verdict only if all the evidence points one way and is susceptible of no reasonable inference sustaining a finding of such behavior on the part of TWA. *Mississippi Lofts, Inc. v. Lexington Ins. Co.*, 841 F.2d 251, 253 (8th Cir.1988). We apply the same standard as the trial court in considering such a motion. *Brown v. Missouri Pac. R.R.*, 703 F.2d 1050, 1052 (8th Cir.1983).

The district court did not question whether punitive damages are allowed under the ACAA but instead merely concluded that there was insufficient evidence to submit the question to the jury. We agree with the district court that the Tallaricos failed to present sufficient evidence to support an award of punitive damages and similarly do not reach the question of whether punitive damages would be allowed under the ACAA.

### D. Exclusion of statements made after the denial of boarding

■ Following the Thanksgiving holiday, Mrs. Tallarico and Polly flew back to Houston. While at the Houston airport, Mrs. Tallarico, Polly and Mr. Sherwood, the limousine driver, spoke with two TWA employees who, at that time, made derogatory remarks about Polly and the earlier incident. The Tallaricos attempted to offer these statements as evidence of TWA's motive in denying Polly the right to board. The Tallaricos contend that the statements were admissible under Fed.R.Evid. 801(d)(2)(D) as an admission against interest or under Fed.R.Evid. 803(3) as statements of TWA's intent or motive. In the alternative, the Tallaricos contend that the statements were not offered to prove the truth of the matter asserted and, therefore, were not hearsay.

The district court did not allow these statements into evidence, concluding that the statements were not admissable under Fed.R.Evid. 801(d)(2)(D) because the statements were not binding upon TWA. The court noted that the persons who made the statements were non-management employees of TWA and were not involved in the decision of TWA not to allow Polly to board. The court also determined that the statements were inadmissable because they were irrelevant to the issues presented in the lawsuit. The court stated that it did not "believe that the events of December 2nd relate to—either through the claim for animus or motive or intent, whatever the Plaintiff—whichever one or all the Plaintiff might be submitting them on with regard to the punitive damages, et cetera. I think they are too remote in time. I think they

are another incident." Transcript, vol. 2 at 187. The court also stated that it believed that the evidence would be "highly inflammatory." *Id.*

"A trial court's ruling concerning the admissibility of evidence can be reversed only upon showing that a clear abuse of discretion has occurred." *Hoover v. Thompson,* 787 F.2d 449, 450 (8th Cir.1986) (citations omitted). We find no such abuse here. Even assuming that the statements were properly admissable, the exclusion was harmless error.

### E. Exclusion of the testimony of the expert witness

■ At trial, the court excluded the testimony of the Tallaricos' expert witness. The witness, who was a psychologist, was to testify concerning the emotional injuries Polly received as a result of the denial of boarding. The court refused to allow the witness to testify "because plaintiffs did not include the psychologist in their pre-trial witness list and because permitting plaintiffs to call the psychologist as a witness would have prejudiced TWA." *Tallarico,* 693 F.Supp. at 791 n. **.

The Tallaricos first assert that the expert was designated in their pre-trial witness list. Furthermore the Tallaricos allege that because the parties were still conducting discovery up to the time of trial, the parties had stipulated that they would waive the requirements of Local Rule 33 of the Rules of the United States District Court for the Eastern District of Missouri. Local Rule 33 requires that parties make their expert witnesses available for deposition by the opposing party at least 45 days prior to trial. The Tallaricos did not make this witness available to TWA until after the trial had begun.

The district court is allowed wide discretion in determining the admission or refusal of expert testimony. *Grogan v. Garner,* 806 F.2d 829, 837 (8th Cir.1986). We find no error in the court's decision to exclude this expert testimony from trial. We agree with the district court that the Tallaricos should have made this witness available to

TWA before the day preceding her testimony.

III. Conclusion

We have considered the Tallaricos' other assignments of error including the decision of the court to disallow the cost of copies of depositions as a reimbursable cost of the Tallaricos and find no error. For the foregoing reasons the judgment of the district court is affirmed in part and reversed in part.